IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ROBERT McCARTHY and<br>SHARON McCARTHY,<br><br>      Plaintiffs,<br><br>vs.<br><br>KOOTENAI COUNTY, et al,<br><br>      Defendants. | Case No. CV08-294-N-EJL<br><br>MEMORANDUM DECISION & ORDER |

Pending before the Court in the above-entitled matter is Defendants' Motion for Summary Judgment and Motion to Dismiss Plaintiff's State Law Claims (Docket No. 25). Plaintiff filed a response to the motion and Defendants filed a reply. Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

Factual Background

Plaintiffs Robert McCarthy and Sharon McCarthy ("Mr. and Mrs. McCarthy" or the "McCarthys") filed their 42 U. S. C. § 1983 Complaint against Kootenai County, Kootenai County Sheriff's Department and Sergeant Steve Stenersen ("Stenersen") of the Kootenai County Sheriff's Department (collectively referred to as the "Defendants").

The facts are generally undisputed. Sergeant Stenersen drove to the Plaintiffs' property on July 17, 2006, to serve process on the Plaintiffs regarding a civil lawsuit. Service of process is an activity within the scope of employment with the Kootenai County Sheriff's office and Stenersen served individuals with process nearly everyday he was on duty.

Stenersen arrived at approximately 1:00 p.m. A gate prevented the officer from driving his vehicle up to the house located up at the top of the hill. There was a "No Trespassing" sign on the fencing to the property. Stenersen entered the property and began walking up the driveway towards the house. The officer walked approximately 200 yards up the hill towards the residence and was about 30 yards from the residence when the officer noticed a large German Shepherd on the lawn in front of the residence. Stenersen began walking backwards slowly, but the dog alerted and started charging towards the officer. A second dog followed the German Shepherd. The officer yelled at the dogs to stop, however, the dogs continued toward him barking and growling. The officer again yelled for the dogs to stop, but the German Shepherd continued its attack. Stenersen fired one shot at the dog striking its head. The German Shepherd retreated towards the house. The other dog stopped attacking and ran out of view.

Mrs. McCarthy came out of the house at the top of the driveway. Mr. McCarthy came out of an outbuilding near the house. Stenersen identified himself as being from the Kootenai County Sheriff's Department. Stenersen was wearing a baseball style cap that said "SHERIFF" on the front and an identification tag around his neck. Stenersen informed the McCarthys that he was on their property to serve them with process, had been attacked by their dogs and was forced to shoot one of the dogs in self-defense. Stenersen served the McCarthys with process and walked back down the driveway to his vehicle.

Stenersen radioed for a patrol vehicle and a Kootenai County Sheriff's Department Animal Control officer to be sent to his location. Stenersen remained in his vehicle until the other officers arrived. After describing the events to the other officers, Stenersen left the location.

The dog that was shot ran under the house and was badly injured. The dog did not die from the injuries from the officer's weapon. The McCarthys did not see the officer coming up the driveway or the dogs attacking the officer. Once they heard the gun shot, the McCarthys came out to see what was going on.

Plaintiffs claim the Defendants violated their Fourth Amendment Rights to be free from unlawful searches and seizures. Plaintiffs also set forth two state law tort actions against the Defendants for the intentional infliction of emotional distress and trespass. Defendants deny the allegations and move for summary judgment arguing no constitutional violation occurred, the officer is entitled to qualified immunity and the state law claims should be dismissed as Plaintiffs failed to post the requisite bond pursuant to Idaho Code § 6-610.

## Motion for Summary Judgment

1. Standard of Review

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Supreme Court has made it clear that under Rule 56 summary judgment is mandated if the non-moving party fails to make a showing sufficient to establish the existence of an element which is essential to the non-moving party's case and upon which the non-moving party will bear the burden of proof at trial. See, Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986). If the non-moving party fails to make such a showing on any essential element, "there can be no `genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.[1]

---

[1] See also, Rule 56(e) which provides, in part:

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." Hahn v. Sargent, 523 F.2d 461, 464 (1st Cir. 1975) (quoting First Nat'l Bank v. Cities Serv. Co. Inc., 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. See, e.g., British Motor Car Distrib. v. San Francisco Automotive Indus. Welfare Fund, 882 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

Id. at 374 (citation omitted).

Of course, when applying the above standard, the court must view all of the evidence in a light most favorable to the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Hughes v. United States, 953 F.2d 531, 541 (9th Cir. 1992).

2. Analysis

   A. Section 1983 Claims in General

The purpose of 42 U.S.C. § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to harmed parties. See Wyatt v. Cole, 504 U.S. 158, 161 (1992). To state a claim under § 1983, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity

---

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

MEMORANDUM DECISION AND ORDER - 4

secured by the Constitution or federal law by a person acting under color of state law. Id. Acting under color of state law is "a jurisdictional requisite for a § 1983 action." West v. Atkins, 487 U.S. 42, 46 (1988). In this case, it is not disputed that the named Defendants were acting under color of state law. Therefore, the question becomes, did the Defendants' actions deprive Plaintiffs of a right, privilege or immunity secured by the Constitution or federal law.

    B. Qualified Immunity

Defendants have also raised the defense of qualified immunity. Law enforcement officers are entitled to "qualified immunity" for their actions within the scope of their employment "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). The purpose of qualified immunity is to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Saucier v. Katz, 533 U.S. 194, 200, 202 (2001). On the other hand, this privilege allows redress where clear wrongs are caused by state actors. Id. "The privilege is an immunity from suit rather than a mere defense to liability, and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. at 200-01. "As a result, [courts] have repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation," long before trial. Id. at 201, see also Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993) (citing Hunter v. Bryant, 502 U.S. 224 (1991)).

The initial question in determining whether an officer is entitled to qualified immunity is whether, taken in the light most favorable to the party asserting injury, the facts alleged show that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201, (2001); Billington v. Smith, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, "there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201. If, however, a violation could be established under the facts presented, the next step is to determine whether the right was "clearly established." Id. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a

MEMORANDUM DECISION AND ORDER - 5

reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted, under clearly established standards." Id. at 208. Plaintiff bears the burden of establishing the rights violated were "clearly established." Houghton v. South, 965, F.2d 1532, 1534 (9th Cir. 1992).

"[S]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, the Court will analyze the constitutional rights Plaintiffs allege were violated by the Defendants.

C. Fourth Amendment Violations

Plaintiffs claim Defendants violated their Fourth Amendment Rights to be free from unlawful searches and seizures. The Court respectfully disagrees that the deputy's conduct rose to the level of a constitutional violation.

The Fourth Amendment protects against unreasonable searches and seizures. Katz v. United States, 389 U.S. 347 (1967). To determine whether a "search" has taken place, the question becomes was there a "reasonable expectation of privacy" in the area the search occurred. Id. Seizures of property are subject to Fourth Amendment scrutiny even if not Fourth Amendment "search" has occurred. Soldal v. Cook County, 506 U.S, 56, 68 (1992). A"seizure occurs when "there is some meaningful interference with an individual's possessory interest in that property." United States v. Jacobsen, 466 U.S. 109, 113 (1984). Any seizure must be reasonable under the circumstances and becomes unlawful when it is "more intrusive that necessary." Florida v. Royer, 460 U.S. 491, 504 (1983).

First, the sheriff's deputy's entrance on to the property was not a Fourth Amendment violation. Idaho statutes provide the authority for sheriff's to serve all process and notice. Idaho Code § 31-2202(8). Process includes "all writs, warrants, summons and orders of courts of justice or judicial officers." Idaho Code § 31-2201. Notice "includes all papers and orders (except process) required to be served in any proceeding before any court, board, officer, or when required by law to be served independently of such proceeding." Idaho Code § 31-2201. The county sheriff is authorized to hire employees to help with his duties.

Idaho Code § 31-2003. Therefore, the deputy's completion of the service of process duties is not a violation of the statutes. Kootenai County Sheriff's Department has a Civil Division who's responsibility it is to serve process. Plaintiffs argue that Kootenai County Sheriff's Department policy at the time was not to serve process in civil matters. The Defendants maintain that although the Sheriff's office wanted to decrease the service of process duties, it was still the policy to serve process when requested and it was required duty under state law for the Sheriff's office to complete civil service of process when requested. Sergeant Stenersen regularly served process in civil matters and the one of the purposes of the Civil Division was to serve process. Accordingly, the act of serving process was not a constitutional violation.

Second, Plaintiffs argue that Stenersen was without authority to enter the property since it was marked with a "No Trespassing" sign and the Plaintiffs had an expectation of privacy on their own property. Defendants argue the "no Trespassing" sign did not prevent the officer from entering the property as the property around the residence was subject to the "open fields" doctrine and Plaintiffs had no expectation of privacy on the part of the property the deputy entered. The Court finds the officer entering the property that was marked with a "No Trespassing" sign was not a constitutional violation.

"There is no violation of the Fourth Amendment when an officer comes upon private property to serve legal process, so long as there is no breaking or entering of a dwelling or other building of a type protected by the Amendment." United States v. Orlander, 584 F.2d 876, 888 (9th Cir. 1978) (reversed on other grounds). Serving process in a peaceful manner is not a search or seizure. Id.

Moreover, "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except the area immediately surrounding the home." Oliver v. United States, 466. U.S. 170, 178 (1984). This is also known as the "open fields" doctrine in that open fields do not provide the setting for the intimate activities that the Amendment is intended to shelter from government interference or surveillance." Id. at 179. The theory is that open fields around a house are usually accessible to the public and there is no expectation of privacy for the open fields that society recognizes as reasonable. Id. In

MEMORANDUM DECISION AND ORDER - 7

Oliver, there was a "No Trespassing" sign on the property, but the court held only the curtilage, not the neighboring open fields warrant the Fourth Amendment protections that attach to the residence. Id. at 180. Moreover, the "No Trespassing" sign did not prevent the officer from entering the open fields surrounding the residence when he entered the property for a legitimate and legal reason. See State v. Kelly, 678 P.2d 60, 67 (Idaho Ct. App. 1984); State v. Rigoulot, 846 P.2d 918, 923 (Idaho Ct. App. 1992). Finally, Stenersen did not enter into the curtilage or residence in serving process, so there was no expectation of privacy by the Plaintiffs when the officer went up the driveway for a legitimate purpose. The officer's report indicates that he had walked up the driveway approximately 200 yards and was still 30 yards from the residence when he noticed the German Shepherd. These facts support a finding that the officer was within the "open fields" of the property were there was no expectation of privacy.

Third, Plaintiff argues that injuring the dog was an unlawful seizure. Defendants attempt to argue the dog was not seized since the dog was not killed, but only injured. The Court finds the Defendants argument regarding killing or maiming the dog to be without merit. The value of the dog was clearly reduced by the injury it sustained and the possessory interest of the Plaintiffs in the dog was significantly affected by the officer shooting and injuring the dog.

In San Jose Charter of the Hells Angels Motorcycle Club v. City of San Jose, 402 F.3d 962, 975 (9th Cir. 2005), the Ninth Circuit held that "'The killing of [a] dog is a destruction recognized as a seizure under the Fourth Amendment' and can constitute a cognizable claim under § 1983." In San Jose Charter the facts differed significantly from the facts in the case at bar. Officers had a week to plan the execution of a search warrant, were aware of dogs on the properties before they arrived, took no steps to find alternative methods to control the dogs. The Ninth Circuit concluded the shooting of the dogs was not reasonable in that case.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham v. Connor, 490 U.S. 386, 396 (1989). In the present case the officer did not have a week to plan the service of process and was not aware of dogs being on the property until the dogs

MEMORANDUM DECISION AND ORDER - 8

attacked the officer. "To determine whether the shooting of the dogs was reasonable, we balance 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the counterveiling governmental interests at stake.'" Id. citing Graham v. Connor, 490 U.S. 386,396 (1989).

Under the undisputed facts of this case, the Court finds the actions of the officer were reasonable under the circumstances. The officer indicated that he felt threatened by the two attacking dogs and his verbal commands did not cause the dogs to stop attacking. Plaintiffs have provided no evidence that the dogs were not attacking the officer since the Plaintiffs did not come out of the buildings until after the gun shot was fired. An officer has a right to protect himself from harm and the officer believed he as in a potentially dangerous situation to a perceived attack by a German Shepherd and another dog the officer reasonably believed to be  attack dogs. See United States v. Harrington, 923 F.2d 1371, 1373 (9th Cir. 1991) (use of force does not render an action unconstitutional where the force was "justified by concern for the safety of the officers or others"); Pfiel v. Rogers, 757 F.2d 850, 866 (7th cir. 1985 (officer's shooting of dogs did not violate Fourth Amendment, although alternatives were available to the officer), cert. denied, 475 U.S. 1107 (1984).

Plaintiffs maintain the shooting of the dog was not reasonable.  However, the Plaintiffs did not observe  the dogs interacting with the officer and this statement alone cannot create a genuine issue of material fact. Moreover, an officer need not use the least harmful alternative in dealing with a dangerous situation in which officer safety is an issue.  Requiring the least intrusive alternative is not a realistic approach where law enforcement officers have to make split second decisions regarding their safety. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989).

Stated another way, the Court finds that the governmental interest of officer safety outweighs the Plaintiff's possessory interest in their dog. The damage to the dog was not "unnecessary" when the totality of the circumstances are considered.

MEMORANDUM DECISION AND ORDER - 9

Alternatively, even if the actions of Sergeant Stenersen rose to the level of a constitutional violation, the Court finds that Stenersen would be entitled to qualified immunity for his actions. The Court finds that a reasonable officer concerned about his personal safety would not have understood that shooting the dog violated a clearly established constitutional right. While it is arguable that the law is clearly established when a dog is "killed" by an officer, the law is not clearly established for injuring a dog when the officer first tried to stop the dogs from attacking with verbal commands, had no knowledge he would encounter dogs and feared for his safety.  Further, the case law supports an officer's understanding that destruction of property may occur incident to completing lawful duties such as service of process.

D. Claims Against Municipalities

Plaintiffs have sued Stenersen in his official capacity, so these claims are actually claims against Kootenai County and Kootenai County Sheriff's Department. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  To make a claim against a municipality for a § 1983 violation, four criteria must be satisfied:

> (1) That [the Plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the Plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation.."

Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting City of Canton v. Harris, 489 U.S. 378, 389-91 (1989)).

A municipality may not be held liable under § 1983 solely because it employed a constitutional wrongdoer.  Monell v. Dept. of Social Services, 436 U.S. 658 (1978). Furthermore, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred.  Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).

As to Plaintiffs' claims against Kootenai County, a municipality cannot be held liable under § 1983 where no constitutional violation has occurred. Sweaney v. Ada County, 119 F.3d 1385, 1392 (9th Cir. 1997).  In this case, the Court has determined that no violation of a constitutional right occurred, therefore, the claims against the municipality must also be dismissed as a matter of law.

Moreover, the Court finds Plaintiffs have failed to carry their burden to establish via evidence that the municipality had a policy or custom which was the moving force behind the alleged constitutional violations. A plaintiff is required to provide evidence of a "formal policy" or "widespread practice" in order for a municipality or local government unit to be held liable under § 1983. Nadell v. Las Vegas Metropolitan Police Dept., 268 F.3d 924 929 (9th Cir. 2001). A custom may be inferred from "evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded." Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir.1992). However, "[a] plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee." Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir.1989). No evidence of a policy or custom to violate Plaintiffs' Fourth Amendment Rights has been substantiated by Plaintiffs to create a genuine issue of material fact, so this cause of action must be dismissed.

To the extent Plaintiffs allege the Sheriff's Department failed to train or supervise its officers, but has produced no specific evidence of a training or supervision policy that led to a constitutional violation in this case. Nor have Plaintiffs provided evidence that the actual training received created a widespread practice or repeated constitutional violations for which errant officers were not disciplined. Finally, a single incident does not establish a policy or custom and Plaintiffs have provided no evidence that the Kootenai County Sheriff's Department regularly shoots dogs when serving process.

3. Conclusion

Having found no genuine issue of material fact exist and that no constitutional violation occurred, the Court finds that Defendants are entitled summary judgment in their favor on the § 1983 claim.

## Motion to Dismiss State Law Claims

Defendants move to dismiss Plaintiff's state law claims as a result of Plaintiff's failure to comply with the bond requirements of Idaho code § 6-610. Plaintiffs' Complaint alleges two state law causes of action: intentional infliction of emotional distress and trespass as well as violations of their constitutional rights pursuant to 42 U.S.C. § 1983 against Sergeant

MEMORANDUM DECISION AND ORDER - 11

Stenersen, the County of Kootenai, Idaho and Kootenai County Sheriff's Department. It is undisputed that Sergeant Stenersen was acting as a law enforcement officer at the time of the alleged constitutional violations and violations of state law.

Idaho Code § 6-610 precludes a party from filing a complaint against a law enforcement officer unless plaintiff also files a written undertaking and requisite bonds. Specifically, § 6-610 provides that before any civil action may be filed against any law enforcement officer, when such action arises out of, or in the course of the performance of his duty, the proposed plaintiff, as a condition precedent, shall file a written undertaking with at least two sufficient sureties in an amount to be fixed by the court.

In Urrizaga v. Twin Falls County, 106 Fed. Appx. 546, 549 (2004), the court held that Idaho Code § 6-610 does not violate the Equal Protection Clause of the Fourteenth Amendment and in footnote 2 stated that "[t]here is no bond requirement for bringing claims under 42 U.S.C. § 1983." Therefore, the bond requirement does not apply to the alleged § 1983 violations.

It is the state law claims to which the bond requirement applies. Therefore, Plaintiffs must comply with the mandatory bond requirements when suing peace officers under Idaho Code § 6-610 for the state law claims. See Greenwade v. Idaho State Tax Commission, 119 Idaho 501, 808 P.2d 420 (Ct. App. 1991). Any argument the bond requirement was implicitly repealed pursuant to Kent v. Pence, 116 Idaho 22, 773 P.2d 290 (Ct. App.1989) has been rejected by this Court in a number of cases. See, e.g., Lewis v. City of Nampa, et al, Civil Case No. 04-502-S-EJL.

A plaintiff's failure to post the bond required by § 6-610 would normally preclude plaintiff's state law claims. However, a court may waive costs, fees and security for indigent parties. See, Blackhawk v. City of Chubbuck, 488 F.Supp.2d 1097, 1100 (D. Idaho 2006); Morton v. Lunde, Docket No. CV06-175-N-EJL (D. Idaho 2007); Hyde v. Fisher, 143 Idaho 782, 152 P.3d 653 (Ct. App. 2007) (indigent prisoners can also request waiver under Idaho Code 31-3220A which supersedes the requirements of § 6-610); McMillian v. Gem County, et al, Docket No. CV07-078-S-EJL (waiver for indigency allowed, indigency not established). Pursuant to Idaho Code § 31-3220, a party may file an affidavit stating that he

MEMORANDUM DECISION AND ORDER - 12

or she is indigent and unable to pay the costs, fees and securities associated with a case. This affidavit can be examined by the Court, and after an informal inquiry, if the Court determines the party is indigent, the Court could waive certain costs, fees and security.

In this case, the Plaintiffs have not filed any affidavits in support of a request to waive the bond requirement. Therefore, the Court finds the facts of this case do not support a finding that the bond requirement of § 6-610 should be waived. Since it is undisputed Plaintiffs have not complied with the bond requirement of § 6-610, the state law claims must be dismissed without prejudice.

## Order

Being fully advised in the premises, the Court hereby orders that Defendants' Motion for Summary Judgment and Motion to Dismiss Plaintiff's State Law Claims (Docket No. 25) is GRANTED and the case is DISMISSED IN ITS ENTIRETY.

It is further ordered that the motion to amend the Complaint to add a claim for punitive damages (Docket No. 26) is MOOT based on the Court's ruling on the dispositive motions.

DATED: **November 12, 2009**

_____
Honorable Edward J. Lodge
U. S. District Judge